STATE v. CLEVELAND JONES.

(Filed 24 May, 1939.)

Arson § 3: Criminal Law § 32b—Circumstantial evidence of defendant's guilt of arson held insufficient to be submitted to the jury.

Evidence that fresh footprints made by defendant were found about the dwelling house in question the morning after it caught fire and burned to the ground, that the night it caught fire it was occupied by the owner and his family, and that bad feeling existed between the defendant and the owner of the house, *is held* insufficient to be submitted to the jury as to defendant's guilt of arson in the absence of evidence that the fire was of incendiary origin, or that, even conceding that it was of incendiary origin, that it was set fire by defendant, the mere showing of the motive and the presence and opportunity of defendant to commit the offense being insufficient to exclude all reasonable hypothesis of innocence.

APPEAL by defendant from *Burney, J.,* at January Term, 1939, of HOKE. Reversed.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Wettach for the State.*

*H. W. B. Whitley for defendant.*

SCHENCK, J. This is an appeal from a judgment of death upon conviction of arson.

When the State had produced its evidence and rested its case the defendant moved to dismiss the action and for judgment of nonsuit and upon the refusal of his motion preserved exception, and after all the evidence in the case was concluded the defendant moved again for judgment of nonsuit and preserved exception to the refusal to grant his motion. C. S., 4643.

The evidence produced at the trial was sufficient to prove that during the night of 9 November or early morning of 10 November, 1938, the dwelling house of one Quincy Smith, while occupied by him and his

STATE v. JONES.

wife and children and a brother, caught fire and was burned to the ground; that Smith and his family and brother went to bed about 10 o'clock p.m., that there was a hard rain about 10:30 o'clock p.m., that between the hours of 2 and 3 o'clock a.m., Smith was awakened and found that his house was on fire, and that by quick action and "hollering and whooping" he got his family "roused up" and "got them out"; that when Smith discovered the fire "the west side of the kitchen was burnt plumb down"; that in the early morning of 10 November, when Quincy Smith went to feed his stock he observed fresh human tracks, made since the rain of the night before, near his barn and on a path leading from where the defendant was living to Smith's house; that it was subsequently demonstrated that these tracks were made by the defendant; and that some bad feeling existed between the defendant and Smith.

There was sufficient evidence to be submitted to the jury upon the issue of the defendant's being at the house on the night it was burned, and also of a motive for the defendant to set fire to the house; but even if it be conceded that the evidence established that the defendant had an opportunity to commit the crime and had a motive to commit the crime, in the absence of any evidence that the fire was of an incendiary origin, or even if it be further conceded that the fire was of incendiary origin, there is no evidence that this defendant set fire to the house. No one saw the defendant at the house at the time it was set fire, if it was set fire.

As was said by *Merrimon, C. J.,* in *S. v. Goodson,* 107 N. C., 798: "This full summary of the incriminating facts, taken in the strongest view of them adverse to the prisoner, excite suspicion in the just mind that he is guilty, but such view is far from excluding the rational conclusion that some other unknown person may be the guilty party. The mind is not simply left in a state of hesitancy and anxious doubt—it refuses to reach a conclusion."

"It is the accepted rule of law, at least in felonies and capital cases, that where the State relies for a conviction upon circumstantial evidence alone, the facts established or adduced on the hearing must be of such a nature and so related to each other as to point unerringly to the defendant's guilt and exclude every rational hypothesis of innocence. *S. v. Brackville,* 106 N. C., 710; *S. v. Goodson,* 107 N. C., 798; *S. v. Wilcox,* 132 N. C., 1139; 23 C. J., 49; 8 R. C. L., 225; *Rippey v. Miller,* 46 N. C., 479." *Stacy, J.,* in partially concurring opinion in *S. v. Melton,* 187 N. C., 481, 483.

We think the evidence simply raises a strong suspicion of the defendant's guilt, but that it does not in any reasonable view prove his guilt. Taking the strongest view of the evidence adverse to the defendant, it leaves the mind in a state of doubt and uncertainty as to his guilt. The

facts of which there is sufficient evidence, whether taken severally or collectively and in their combined force, are not necessarily inconsistent with the defendant's innocence, and do not exclude the rational conclusion that the origin of the fire may have been other than set by the defendant.

Tested by the rule enunciated by this court we are of the opinion that the evidence adduced was insufficient to be submitted to the jury upon the issue of the defendant's guilt of the felony of which he stood charged, and that the judgment of the Superior Court should be reversed. It is so ordered.

Reversed.